UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DEVELOPERS SURETY & INDEMNITY CO. | CIVIL ACTION NO. 18-1379 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CERCONTEC, L.L.C., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This case arises out of an alleged breach of a contract for indemnity. Now before the Court is a Motion for Default Judgment filed by Plaintiff Developers Surety & Indemnity Company ("Developers") against Defendant Cercontec, L.L.C. ("Cercontec"). [Record Document 27]. For the reasons discussed below, the motion for default judgment is **GRANTED**.

## BACKGROUND

Developers sets forth the facts in its complaint as follows. In order to induce Developers to issue surety bonds, Cercontec, as principal, and Kerry Williams ("Williams"),[1] as an individual indemnitor, each executed an Indemnity Agreement ("the Agreement") in favor of Developers on or about June 17, 2015. Record Document 1, ¶ 5. The Agreement between Williams and Cercontec (collectively, "Indemnitors") and Developers (referred to as "Surety") stated that:

> Indemnitors agree to fully and continuously indemnify Surety against any and all Loss or expenses of every kind or nature, including, without limitation, those incurred: (i) by reason of having executed or procured the execution of any Bond, (ii) by reason of the failure of any Indemnitor to perform or comply with the covenants and conditions of this Agreement, and (iii) enforcing any of the covenants and conditions of this Agreement. Also, Indemnitors agree to indemnify Surety against the fees and disbursements of counsel whether on salary, retainer or otherwise.

---

[1] Williams was originally named as a Defendant in this case and is the sole and managing member of Cercontec. Record Document 1, ¶ 2. After Williams filed a Suggestion of Bankruptcy into the record, Developers voluntarily dismissed its claims against him while reserving any rights it may have against him in bankruptcy court. Record Documents 18 & 24.

1

> Surety may at its sole and absolute discretion pay, compromise, defend, settle, investigate, appeal or otherwise handle or resolve any claim, demand, suit, arbitration demand, judgment, award or expense arising out of or related to any Bond. Any such act or decision by the Surety is binding upon and ratified by Indemnitors and any cost, expense, or payment incurred or made by the Surety shall be a Loss covered by this Agreement. An itemized statement, sworn to by any employee of the Surety, or a copy of a check or draft or other evidence of such payment or compromise, shall be prima facie evidence of the fact and amount of any Loss and the liability of Indemnitors for it under this Agreement.

Record Document 27-3, p. 2. Developers claims that, in reliance upon this Agreement, it issued bonds for two contracts on behalf of Cercontec. Record Document 1, ¶s 6–9.

The first bonds were issued in connection with a contract between the City of Shreveport ("Shreveport"), as owner, and Cercontec, as contractor, for the construction of the Bill Cockrell Pool House Renovations Project. *Id.* at ¶ 6. Upon Cercontec's application, Developers issued bonds with Shreveport as obligee and Cercontec as principal for the Cockrell contract. *Id.* at ¶ 7; *see* Record Document 27-4. The second bonds were issued in connection with another contract between Shreveport and Cercontec for the construction of the Airport Park Pool House Renovations project. Record Document 1, ¶s 8 & 9; *see* Record Document 27-5.

On August 25, 2016, Cercontec sent Developers a letter stating that is was financially unable to complete the work required under the Cockrell and Airport Park contracts without financial assistance. Record Document 1, ¶ 10; *see* Record Document 27-6. Cercontec sent another letter on September 20, 2016, stating that it was in default under the terms of those contracts because of its financial inability to complete the remaining work. Record Document 1, ¶ 11; *see* Record Document 27-7. Because of Cercontec's inability to complete the work, Developers received claims against the bonds it issued in connection with the Cockrell and Airport Park projects. Record Document 1, ¶ 12. Developers alleges that it has paid Cercontec's subcontractors and suppliers a total of $52,226.23 as a result of the claims asserted against the Cockrell Bonds

and $94,502.58 as a result of the claims against the Airport Park bonds. *Id.* at ¶s 14 & 15. Developers also asserts that it has paid $69,561.35 in consulting fees and payments to Claims Consulting Services, Inc. during the course of its investigation of the claims asserted against the bonds. *Id.* at ¶ 16. As a result of having issued the Cockrell and Airport Park bonds, Developers claims that the total losses, costs, and expenses, including attorneys' fees and consulting fees, that it has incurred to date equal $212,566.56. Record Document 27-2, p. 5. Developers asserts that it is entitled to a judgment confirming the default against Cercontec in the amount of $212,566.56, plus all additional losses, costs, expenses, and attorneys' fees incurred, interest from the date it made each payment, and all the costs of these proceedings. *Id.* at 1.

## **DEFAULT JUDGMENT STANDARD**

A default judgment involves three steps: (1) default, (2) entry of default, and (3) default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing Fed. R. Civ. P. 55(a)).

> A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An entry of default is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.

*Id.* (citations omitted). Here, Cercontec has failed to defend against this lawsuit. Cercontec was initially represented by counsel and filed an answer to the complaint. Record Document 11. Cercontec's counsel later withdrew and the Court gave Cercontec until January 8, 2019, to enroll new counsel. Record Documents 15 & 17. When Cercontec failed to enroll new counsel by that date, the Court struck its answer and ordered the Clerk of Court to enter a default against Cercontec. Record Documents 25 & 26. Therefore, the first two requirements for a default judgment have been met.

By defaulting, a defendant admits to the plaintiff's well-pleaded allegations of fact. *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Even though the facts are admitted, the plaintiff still has the burden of showing that those facts give rise to a viable cause of action. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). In addition, a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). No party is entitled to a default judgment as a matter of right, even where the defendant is technically in default. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). The disposition of a motion for default judgment ultimately rests within the sound discretion of the district judge. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

## LAW & ANALYSIS

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States ex rel. M-CO Constr. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). However, a default judgment does not establish the amount of damages. *Id.* Therefore, the Court must first determine (1) whether Cercontec is liable to Developers for any amount, and then (2) what amount of damages, if any, Cercontec owes to Developers.

### I. Liability

#### A. Appropriateness of Default Judgment

In determining whether to enter a default judgment, the Court must consider whether such a remedy is appropriate under the circumstances of the case. *See Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic

remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.").

Factors relevant to the entry of a default judgment include

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obligated to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

The Court finds that these factors weigh in favor of default. There are no material issues of fact in dispute because Cercontec admitted to Developers' well-pleaded allegations by failing to enroll new counsel, which resulted in its answer being stricken and the Clerk's entry of default. *See Jackson*, 302 F.3d at 525. This failure to respond creates a basis for default and prejudices Developers' interests because it "threatens to bring the adversary process to a halt." *Ins. Co. of the West v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at * 3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Moreover, Cercontec had ample to time answer, which mitigates the harshness of a default judgment. *Id.* Nothing in the record suggests that Cercontec's failure to respond is the result of a good faith mistake or excusable neglect. This is especially true given the fact that Cercontec initially filed an answer. *See* Record Document 11. Clearly, Cercontec has received notice of this lawsuit. Finally, the Court knows of no facts that would provide good reason to set aside a default judgment if Cercontec were to challenge it. Based on these reasons, the Court finds that the circumstances of this case warrant a default judgment. The Court must now determine whether Developers' complaint establishes a cause of action against Cercontec. *Nishimatsu*, 515 F.2d at 1206.

### B. Louisiana Contract Law[2]

Developers asks the Court to enforce its Indemnity Agreement with Cercontec. The Louisiana Civil Code dictates that contracts have the effect of law between the parties. La. Civ. Code art. 1983. Courts are bound to interpret contracts according to the parties' common intent. *Boykin v. PPD Indus., Inc.*, 2008-0117 (La. App. 3. Cir. 6/18/08); 987 So. 2d 838, 842. However, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Each provision in a contract must be interpreted "in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* at art. 2050.

These general rules that govern the interpretation of most contracts apply to contracts of indemnity. *Boykin*, 987 So. 2d at 842 (quoting *Sovereign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982, 984 (La. 1986)). An indemnity contract is the law between the parties and must be interpreted according to its own terms and conditions. *Commercial Union Ins. Co. v. Melikyan*, 430 So. 2d 1217, 1221 (La. Ct. App. 1983). The terms and conditions of a contract of indemnity "will be enforced as written unless they run counter to law or violate well-defined public policy or good morals." *Fid. & Deposit Co. of Md. v. Thieme*, 193 So. 496, 497 (La. Ct. App. 1940).

### C. Analysis

In the Agreement, Cercontec agreed to indemnify Developers against "any and all Loss or expenses of every kind or nature, including, without limitation, those incurred . . . by reason of having executed or procured the execution of any Bond." Record Document 27-3, p. 2. The test set forth in the Agreement is one of causation, whether Developers "incurred losses *because* it

---

[2] Because this case is based on diversity jurisdiction, the Court must apply the substantive law of the forum state, here Louisiana. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

6

furnished a payment and performance bond" for Cercontec. *Gray Ins. Co. v. Terry*, 606 F. App'x 188, 191 (5th Cir. 2015) (per curiam) (emphasis in original). Thus, Cercontec must indemnify Developers "for all payments made to claimants pursuant to the bonds" and "for the costs it incurred in investigating and resolving those claims." *Id.* The Agreement also states that Developers will indemnify Cercontec for the cost of counsel. Record Document 27-3, p. 2.

The Agreement gives Developers the absolute discretion to "pay, compromise, defend, settle, investigate, appeal, or otherwise handle" any claims arising out of the bonds. *Id.* Any act or decision that Developers makes in furtherance of that discretion is binding upon and ratified by Cercontec. *Id.* The Agreement provides a list of several actions on the part of Cercontec that would constitute a default as to the Agreement, including the inability to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract or other obligation covered by a bond. *Id.* at 3. Finally, the Agreement lists several remedies available to Developers in the event of Cercontec's default, including the right to sue to enforce its provisions. *Id.* at 4.

As proof of Cercontec's default, Developers has attached to the instant motion the September 20, 2016, letter stating that Cercontec was in default under the terms of the Cockrell and Airport Park contracts. Record Document 27-7. As stated above, this constituted a default under the Agreement and gave rise to Developers' cause of action. Record Document 27-3, p. 3. As proof of the expenses it incurred in connection with both the Cockrell and the Airport Park contracts, Developers attaches copies of the checks it paid to each vendor, as well as copies of the checks it paid to a consulting firm and its lawyers in connection with this litigation. Record Documents 27-8, 27-9, 27-10, & 27-11. Developers also submits the affidavit of Jef Graham ("Graham"), Developers' assistant manager, wherein Graham restates the facts contained in the instant motion. Record Document 27-2. Both the checks and the affidavit constitute prima facie

evidence of the fact and amount of the loss and the liability of Cercontec for those amounts under the Agreement. Record Document 27-3, p. 2.

Accordingly, the Court finds that Developers has shown that it has a valid cause of action against Cercontec for breach of the Agreement. The pertinent contractual provisions in the Agreement are clear and unambiguous and not contrary to law, public policy, or good morals, and should therefore be enforced as written. Under these provisions, Cercontec is liable to Developers for all of the losses Developers incurred as a result of furnishing bonds for Cercontec. Record Document 27-3, p. 2; *see Gray Ins. Co.*, 606 F. App'x at 191.

## II. <u>Damages</u>

Now that the Court has established that Cercontec is liable to Developers, it must calculate the proper amount of damages. "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing," but the rule "is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). An evidentiary hearing is not warranted when damages can be calculated by reference to the pleadings and the supporting documents by themselves. *Id.* at 311. "The court may rely on detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum." *Richardson v. Salvation Army, S. Territory, USA*, 161 F.3d 7, 7 (5th Cir. 1998) (per curiam). Here, the Court finds that the amount Cercontec owes Developers is capable of mathematical calculation and that no evidentiary hearing is needed to calculate the award.

### A. **Contractual Damages**

Developers claims that it has paid Cercontec's subcontractors and suppliers $52,206.23 as a result of the claims asserted against the Bill Cockrell bonds and $94,502.58 as a result of the

claims asserted against the Airport Park bonds. Record Document 27-1, pp. 4–5. These amounts are supported by the record, which contains copies of the checks it wrote to those subcontractors and suppliers equaling those amounts. Record Documents 27-9 & 27-10. These amounts are further corroborated by Graham's affidavit. Record Document 27-2, pp. 4–5.

These payments qualify as loss under the Agreement, which defines loss to include "amounts paid in satisfaction or settlement of any or all claims . . . relating to [Cercontec's] actual or alleged nonperformance of any obligation covered by a Bond." Record Document 27-3, p. 1. By submitting copies of the payments and an affidavit from Graham, Developers has provided "prima facie evidence of the fact and the amount of any Loss and the liability of [Cercontec] for it under this Agreement." *Id.* at 2. Because Cercontec agreed to indemnify Developers for any loss incurred "by reason of having executed or procured the execution of any Bond," Developers is entitled to a return of the amounts it paid to Cercontec's subcontractors and suppliers, together totaling $146,708.81. *Id.* Developers states that it has recouped $10,000.00 from Cercontec in connection with the Cockrell and Airport Park projects, bringing the current total now due to $136,708.81. Record Document 27-1, p. 5.

Developers also claims to have paid a total of $69,561.35 to Claims Consulting Services, Inc. ("Claims Consulting") in connection with its investigation of the claims against the Cockrell and Airport Park bonds and for consulting services. Record Document 27-1, pp. 3–4. To establish this fact, Developers has submitted copies of the checks it wrote to Claims Consulting and Graham's affidavit confirming those amounts. Record Documents 27-2, p. 3; 27-8. Again, these documents constitute prima facie evidence of the fact and amount of Cercontec's liability for these payments. Record Document 27-3, p. 2. These payments qualify as loss under the Agreement, which states that loss includes expenses paid in connection with actual or potential claims,

including consulting or other services related to the "investigation or defense of actual or potential claims and losses." *Id.* at 1. Developers incurred this loss because it issued the Cockrell and Airport Park bonds to Cercontec and is therefore entitled to a return of the $69,561.35 it paid to Claims Consulting. *Id.* at 2.

**B.    Attorney's Fees**

Developers claims that it was required to expend $6,296.40 in legal fees in order to file this action. Record Document 27-1, p. 5. District courts typically use the lodestar method to calculate the proper amount of attorneys' fees to be awarded. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Under the lodestar method, the court determines the reasonable hourly rates for the participating attorneys and the reasonable number of hours expended on the litigation. *Id.* These two figures are multiplied together to arrive at the lodestar, which is then adjusted upward or downward based on the circumstances of the case. *Id.* However, Developers has not provided the Court with any documents reflecting the number of hours spent on this litigation or its counsel's hourly rate. Therefore, the Court cannot use the lodestar method to calculate reasonable attorneys' fees in this case.

In its section defining "Loss," the Agreement states that "[i]n any suit under this Agreement, [Developers] may recover the additional expenses and reasonable attorneys' fees incurred in such suit." Record Document 27-3, p. 1. Developers has supported the amount of attorneys' fees with copies of checks reflecting payments to its law firm and by Graham's affidavit [Record Documents 27-2, p. 5; 27-11]. According to the Agreement, these documents constitute "prima facie evidence of the fact and the amount of any Loss and the liability of [Cercontec]." Record Document 27-3, p. 2. Furthermore, the Court notes that, from its own judicial experience, this total appears to be a reasonable amount of attorneys' fees for the amount of work Developers'

counsel has performed in this case. If the lodestar method were applied to this amount, it would likely be found reasonable based on the fact that counsel filed a complaint, served Williams and Cercontec, and filed the instant motion. Accordingly, the Court finds that Developers is owed legal fees in the amount of $6,296.40.

### C. Pre- and Post-judgment Interest

Developers claims to be entitled to "interest from the date payments were made by Developers." Record Document 27-1, p. 14. The Court construes this statement as a request for pre-and post-judgment interest. In a diversity case, pre-judgment interest is governed by applicable state law. *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 595 (5th Cir. 2006). Accordingly, pre-judgment interest in this case is governed by Louisiana law.

Because Developers' cause of action arises out of the Agreement, its damages are considered "ex contractu." *In re Matter of Complaint of Settoon Towing, LLC*, 720 F.3d 268, 284 (5th Cir. 2013). Under Louisiana law, interest on "ex contractu" damages is calculated from the date the obligation was due. *Id.*; *see* La. Civ. Code art 2000 ("When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed upon by the parties.").

In this case, the Agreement sets the interest rate at "12% per annum or the maximum rate permitted in the jurisdiction in which the Agreement is enforced, if less." Record Document 27-3, p. 1. The maximum rate for conventional interest in Louisiana is also 12% per annum and therefore the interest shall be calculated at that rate. La. R.S. § 9:3500(C)(1). The Agreement also states that such interest is due from the date that Developers paid any loss. Record Document 27-3, p. 1. Therefore, Developers is entitled to interest from the date it made payments on behalf of Cercontec at a rate of 12% per annum until the date of judgment.

While state law controls the award of pre-judgment interest, federal law controls the award of post-judgment interest, "including decisions about when it began to accrue." *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015) (citing *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 622–24 (5th Cir. 1988)). Title 28 U.S.C. § 1961(a) states that interest shall be allowed on any money judgment in a civil case recovered in a district court, calculated from the date of the entry of the judgment. Therefore, Developers is entitled to receive post-judgment interest from the date of entry of the judgment in this case at the rate governed by 28 U.S.C. § 1961(a).

**D.     Other Costs**

Along with the principal amount of $212,566.56 and interest from the date payments were made, Developers also claims that it is entitled to recover "all additional losses, costs, [and] expenses." Record Document 27-1, p. 14. However, Developers has not made any allegations that it has suffered any additional losses, costs, or expenses, nor has it submitted any evidence establishing such. Again, damages are not awarded on a default judgment without an evidentiary hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation. *James*, 6 F.3d at 310. To calculate such a sum, "[t]he court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." *Richardson*, 161 F.3d at 7. Without documentary evidence establishing any additional costs, such sums are not capable of mathematical calculation and therefore the Court cannot award them. Furthermore, the Court declines to hold an evidentiary hearing to determine the amount of these supposed additional losses when Developers has failed to allege that any were incurred. Therefore, Developers is entitled to a judgment in the amount of $212,566.56, with interest, and nothing more.

## CONCLUSION

For the reasons stated above, Developers' Motion for Default Judgment [Record Document 27] is **GRANTED**.

Developers is awarded damages in the amount of $212,566.56, along with pre-judgment interest from the date Developers paid any loss on behalf of Cercontec in accordance with Louisiana Revised Statute § 9:3500(C)(1) until the date of judgment and post-judgment interest from the date of entry of the Judgment at the federal rate specified in 28 U.S.C. § 1961(a).

A judgment consistent with this ruling will be issued separately.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 13th day of March, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE